# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3979

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| M.J. L'Donna, | * | |
| aka Marilyn J. Ashton, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: May 11, 1999

Filed:  June 17, 1999

_____

Before WOLLMAN, Chief Judge, BEAM and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

M.J. L'Donna was convicted by a jury of use of interstate commerce facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1958, and transferring a firearm to be used to commit a crime of violence, in violation of 18 U.S.C. § 924(h). L'Donna filed a motion for a new trial based on the false testimony of a prosecution

witness. The motion was denied, and on appeal she argues that the district court[1] erred by denying the motion. We affirm.

There was evidence at trial that L'Donna, the owner of a horse-carriage business in Kansas City, had approached an employee known as Shawn Butner and asked if he would be willing to kill someone for her. Butner contacted the Bureau of Alcohol, Tobacco and Firearms (ATF) and told agents about this conversation. They arranged for Butner to wear a digital micro-recorder during subsequent conversations with L'Donna. During tape-recorded meetings both in person and over the telephone, L'Donna talked about three potential targets. She discussed killing several people: her stepfather who was in the process of divorcing her mother, her primary competitor in the horse-carriage business, Mary Goodale, and her boyfriend, John Encell. She eventually asked Butner to kill Encell, who had named her as the beneficiary of his life insurance policy. In the course of these meetings, L'Donna gave Butner a handgun to use in the killing and a total of $300 in cash, promising an additional $5,000 when she received the proceeds of Encell's life insurance.

At trial L'Donna testified that these conversations were all part of a game that Butner had wanted her to play and that she had had no intention of actually having anyone killed, but she did not offer this explanation at the time of her arrest. She also testified that she had not known that she was Encell's life insurance beneficiary, but she had referred to the policy in her taped conversations with Butner, and Encell testified that she knew about the provisions of his policy. The jury convicted L'Donna on both counts in the indictment, and she was sentenced to 121 months.

During Butner's direct examination at trial, the prosecutor asked about his activities in relation to a well-publicized arson case involving an explosion that killed several Kansas City firefighters. Butner responded that he had called the bomb and

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

arson squad during the investigation of that case and told it that his brother and sister, Thomas and Cindy Butner, had information about the case. He said that Thomas and Cindy had been paid for testimony they subsequently gave in that case, but he denied having had further involvement in the firefighters case or having told anyone that he had been a witness in it. He acknowledged that ATF had paid him for his assistance in the case against L'Donna, including paying for his apartment. The defense produced evidence to contradict Butner's denial that he had testified in the firefighters case in exchange for fees, as well as several witnesses who testified that Butner had a poor reputation for truthfulness.

The day Butner testified at trial L'Donna's attorney received an anonymous call saying that Shawn Butner's real name was Tommy. A local news broadcast on that day had included film footage of Butner, and additional photographs of him appeared in the media on the day the verdict was announced. A number of other anonymous callers then contacted defense counsel and said the man pictured in the report was Thomas Butner. L'Donna's attorney learned after the trial that Butner had lied about his identity at trial, had falsely denied having testified in exchange for witness fees in the firefighters case, and had had a prior misdemeanor conviction that went undiscovered because he had used a false identity.[2] Based on this information L'Donna moved for a new trial.

The district court denied the motion for a new trial, stating that Butner had been "effectively cross-examined, impeached, and discredited by the defense," that L'Donna's trial testimony and tape-recorded exchanges with Butner presented ample evidence of her guilt beyond a reasonable doubt, and that the newly discovered

---

[2]Butner was eventually charged with perjury and admitted he had lied about his identity. He told ATF agents that he had changed his identity after testifying in the firefighters case in order to avoid appearing on a probation violation warrant. He also told the agents that he had testified truthfully at L'Donna's trial concerning matters other than about his identity and his testimony in the other case.

evidence was merely cumulative, immaterial, and not of a nature that would probably have produced an acquittal. The court concluded that although the government's failure to discover Butner's true identity "may be puzzling," there was no evidence that the prosecution had known that Butner was lying at the time of trial.

L'Donna appeals, arguing that the district court applied the incorrect legal standard in deciding whether to grant her post-trial motion and that she is entitled to a new trial. We review a district court's decision to deny a motion for a new trial based on newly discovered evidence for clear abuse of discretion. See United States v. Warren, 140 F.3d 842, 743-44 (8th Cir. 1998); United States v. Ward, 544 F.2d 975, 977 (8th Cir. 1976).

L'Donna correctly states that the standard for whether she should have received a new trial depends on the presence or absence of prosecutorial misconduct. Where the prosecution knowingly, recklessly or negligently uses perjured testimony, a conviction must be set aside if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." See United States v. Tierney, 947 F.2d 854, 860-61 (8th Cir. 1991). Appellant claims that the district court should have used this Tierney standard rather than the Ward standard, which applies if the government's use of perjured testimony was unwitting and which requires a greater showing for the defendant to prevail. See 544 F.2d at 977. Under Ward, the defendant must show that the evidence had not been discovered until after the trial, that the defendant had used due diligence before the trial, that the evidence was not merely cumulative or impeaching, that the evidence was material to the issues involved, and that the newly discovered evidence would probably produce an acquittal at a new trial. See id. at 977; see also Warren, 140 F.3d at 744.

L'Donna claims that the prosecutor was at least negligent in allowing Butner to testify as he did and that she therefore only has to meet the Tierney standard to win a new trial. L'Donna claims that the prosecution had reason to suspect that Butner was not who he claimed to be before he testified at trial. According to L'Donna, an

-4-

investigator working with defense counsel had remarked to the prosecutor during a meeting that it seemed as if Butner had no past before he went to work with the City Lights Limousine Service and met an associate of L'Donna's. She also claims that the investigator asked the prosecutor if he was sure that Shawn Butner was the real name of the witness. The prosecutor does not recall either of these statements but recalls telling the investigator that Butner was a "clean" witness. Defense counsel asked the prosecutor if Butner had testified in the firefighters case, and L'Donna claims that this inquiry should have triggered additional investigation by the government. L'Donna contends that the government should have discovered that Shawn Butner was actually the Thomas Butner who had testified in the firefighters case because the United States Attorney's office handled both cases and the same special agent worked on both investigations.

L'Donna has not shown that the district court erred in refusing to apply the Tierney standard. The special agent whom Butner first contacted had taken steps to verify his identity, including running his name and license tag number through the Kansas City police department records and through the Missouri Department of Revenue and confirming his name, address, date of birth, social security number and driver's license number. This investigation did not turn up anything suspicious. There is also no indication in the record that defense counsel brought information about Thomas Butner's testimony in the other case to the attention of the prosecutors handling L'Donna's case. L'Donna has not shown that the prosecutor was negligent or that the motion should have been decided under the Tierney standard.

Moreover, L'Donna has failed to demonstrate that she is entitled to a new trial under either the Tierney or Ward standards. She has not shown a reasonable likelihood that the false testimony could have affected the judgment of the jury, see Tierney, 947 F.2d at 861, much less that it would probably have produced an acquittal, see Ward,

-5-

544 F.2d at 977.[3] The evidence of her guilt was great, and the most damaging portions came from L'Donna herself in the form of the self-incriminating statements in the taped conversations and her unconvincing testimony during trial. Butner was cross-examined at trial regarding his participation in the firefighters case and his credibility was impeached. Given these circumstances, the additional evidence would have been cumulative and there was no foreseeable likelihood that any possible further impeachment value from it would have affected the final judgment of the jury.

Accordingly, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Appellant argues that the district court erred by failing to hold an evidentiary hearing to develop what the prosecution knew or should have known about Butner's false identity and which standard was appropriate to apply. Because L'Donna was not entitled to a new trial under either standard, such a hearing would not have impacted the outcome.