# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3992

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Donald Deavault, | * | Eastern District of Missouri. |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 11, 1999

Filed: September 9, 1999

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WATERS,[*] District Judge.

_____

LOKEN, Circuit Judge.

Donald Deavault appeals his conviction for carjacking and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 2119(a) and 924(c)(1). Deavault argues there was insufficient evidence to convict, the district court[1] abused

_____

[*]The HONORABLE H. FRANKLIN WATERS, United States District Judge for the District of Arkansas, sitting by designation.

[1]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

its discretion by denying his post-trial motion for a new trial based upon newly discovered evidence the government had improperly withheld, and the court erred in not suppressing evidence of the victim's impermissibly suggestive pretrial identification and her unreliable in-court identification. We affirm.

## I. Sufficiency of the Evidence

At about 8:30 p.m. on February 21, 1998, medical student Kara Ann Cummins returned to her car after shopping at the Galleria Mall in Richmond Heights, Missouri. She put her packages in the back seat. As she opened the driver's side door, she was attacked from behind. The armed assailant pushed her across to the passenger side and drove to a Mall exit, holding Cummins with his right hand and warning her not to leave the car. When the car stopped at the stoplight at the Mall's perimeter, Cummins managed to fight off the carjacker, open the passenger door, and roll to safety before the car drove away. Though the carjacker put a scarf over his face once they were in the car, Cummins testified that she got a close-up look at his face during their initial struggle. She gave the police a detailed description later that evening, picked Deavault out of a six-person photo lineup the morning of February 23, and unequivocally identified him as her assailant at trial. In addition, the government introduced evidence that Deavault was in possession of the stolen car before it was recovered the next day, and that he made incriminating statements when arrested in early May.

On appeal, Deavault argues this evidence was insufficient to prove that he was the armed carjacker. When sufficiency of the government's evidence is challenged, we review the trial evidence in the light most favorable to the jury's verdict. See United States v. Willis, 89 F.3d 1371, 1376 (8th Cir.), cert. denied, 519 U.S. 909 (1996). Though the defense presented three alibi witnesses who testified that Deavault was not at the Mall when the carjacking occurred, we conclude the government's evidence was more than sufficient to support the jury's verdict.

## II. The New Trial Motion

At trial, the defense called three witnesses who placed Deavault at his residence the entire afternoon and evening of the carjacking. In rebuttal, the government called Renee Farwell, who testified that Deavault was in a group of young African-American males who approached the Arby's restaurant counter in the food court at the Galleria Mall between 3:00 and 3:30 p.m. on the afternoon of February 21, some five hours before the carjacking. According to Farwell, three of the group asked for and filled out job applications. After the trial but before sentencing, Deavault moved for a new trial on the ground that the videotape of a surveillance camera in the Mall's food court showed that no group of African-American males came to the Arby's counter between 2:00 and 4:00 p.m. that day. The district court held an evidentiary hearing on this motion. Deavault presented testimony by the defense investigator who had obtained and watched the tape; the government presented testimony by the Galleria Mall employee responsible for the video surveillance system, who had also watched the tape. Commenting that "[t]he evidence of guilt was very strong," the district court denied the motion, concluding that Deavault "fails in his burden to show that he is entitled to a new trial based upon what is classified as newly-discovered evidence."

On appeal, Deavault seeks to augment this newly discovered evidence issue by arguing that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by withholding the exculpatory videotape. This contention does not change the standard of review. We review the denial of a motion for new trial based upon newly discovered evidence or based upon a Brady violation for abuse of discretion. See United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998), cert. denied, 119 S. Ct. 1454 (1999).

We conclude the government did not violate Brady because the videotape evidence was not suppressed. During pretrial discovery, the government provided police reports revealing the existence of Mall surveillance tapes from the day in question. The defense subpoenaed tapes of the outside area where the carjacking

occurred but not tapes of areas inside the Mall, even though the defense investigator interviewed Farwell and learned the substance of her later testimony. "Evidence is not suppressed if the defendant has access to the evidence prior to trial by the exercise of reasonable diligence." United States v. Stuart, 150 F.3d 935, 937 (8th Cir. 1998).

For the same reason, the district court did not abuse its discretion in denying Deavault's motion for new trial based upon newly discovered evidence. Newly discovered evidence does not warrant a new trial if the failure to discover it before trial was "attributable to a lack of due diligence on the part of the movant." Ryan, 153 F.3d at 713. In addition, Deavault cannot meet the rigorous new trial standard because the evidence was neither material nor likely to produce an acquittal given the strong evidence of Deavault's guilt. It is undisputed that the camera swept a broad area of the food court, returning to the Arby's counter every seventy seconds, and that there were "blind spots" not within the camera's view. In addition, the two witnesses at the motion hearing disagreed as to whether the tape showed a group of African-American males in the food court area. The tape was not evidence of the crime itself, and it provided only questionable impeachment of the government's rebuttal witness. Thus, its absence from the trial was at most harmless error.

### III. The Identification Evidence

After St. Louis police officers recovered the victim's car, Richmond Heights Detective Michael Brown, who had interviewed Cummins the night of the carjacking, showed Cummins a spread of six photographs. The photos were of Deavault, three African-American males who were in or around the car when it was recovered, and two randomly selected African-American males who resembled Deavault. Cummins identified Deavault as her assailant. At trial, both Cummins and Brown described this pretrial identification, and Cummins also made an unequivocal in-court identification. Deavault argues the district court erred in not suppressing this evidence because the

three men who were in or around the car do not look like Deavault, and therefore the photo lineup was impermissibly suggestive. We disagree.

In conducting the photo lineup, Detective Brown had two legitimate purposes -- to find out whether the victim could either identify *or exclude* each of the four suspects. To accomplish both objectives, he had to show Cummins photos of all four, whether or not they resembled each other. Perhaps a more perfect procedure would have been to construct a photo lineup spread for each of the four suspects and show the four spreads sequentially. But the law does not require perfect identification procedures, only the absence of any procedure so impermissibly suggestive that it "created a very substantial likelihood of irreparable misidentification." United States v. Triplett, 104 F.3d 1074, 1079 (8th Cir.), cert. denied, 520 U.S. 1236 and 1270 (1997). In this case, the photo lineup procedure used by Detective Brown was not particularly suggestive of Deavault, as opposed to any of the other three suspects. In addition, we have carefully reviewed the transcript of Cummins's in-court identification of Deavault as her assailant. Using the reliability factors summarized in Manson v. Brathwaite, 432 U.S. 98, 114 (1977), we have no difficulty concluding that Cummins's identification testimony had sufficient indicia of reliability to be admissible. Accordingly, the district court did not err in denying Deavault's objections to this evidence.

The judgment of the district court is affirmed. Deavault's pro se motion to compel is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-