# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 00-3779

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Nathan Benedict Dogskin, Jr., | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted: May 15, 2001

Filed: September 10, 2001

———————

Before LOKEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

———————

LOKEN, Circuit Judge.

Nathan Benedict Dogskin, Jr. was convicted of aggravated sexual abuse and aiding and abetting aggravated sexual abuse in violation of 18 U.S.C. §§ 2, 1153, and 2241(a)(1). Dogskin appeals the district court's[1] denial of his motion for a new trial based on newly discovered evidence and alleged government misconduct and his request for an evidentiary hearing. We affirm.

———————————

[1]THE HONORABLE PATRICK A. CONMY, United States District Judge for the District of North Dakota.

# I.

We summarize the trial evidence in the light most favorable to the jury's verdict. After midnight during an all-day New Year's Eve party at the home of Dogskin's father, Harriet Ramsey went into the basement with her brother Claude and Edgar Fasthorse. Dogskin and co-defendant Gerald Lovejoy went into the basement and began beating Fasthorse, the aftermath of an earlier altercation. Claude Ramsey left the basement during the struggle. Ramsey tried to stop the fight, but Dogskin pushed her to the floor. With Fasthorse rendered unconscious, the defendants began hitting and kicking Ramsey. Lovejoy pulled off Ramsey's pants and raped her while Dogskin restrained her, then Dogskin raped her while Lovejoy held her down by putting his boot on her forehead. Ramsey eventually broke free and ran upstairs, awakened several of the party-goers, and told them she had been raped. When Dogskin came upstairs, Ramsey hit him with a baseball bat. Later that morning, Ramsey went to a neighbor's house and had the neighbor notify police of the rape. Dogskin and Lovejoy slept until the police arrested them.

FBI Special Agent Drew Helms testified that, when interviewed, Dogskin initially denied any involvement. When told Lovejoy had implicated him in the rape, Dogskin admitted he had helped beat Fasthorse, had restrained Ramsey while Lovejoy raped her, and then had "got[ten] on top" of Ramsey, all because Lovejoy had threatened to beat Dogskin if he did not participate. Dogskin also told Helms that he thought he had penetrated Ramsey.

There was no physical evidence linking Dogskin to the rape, and there was evidence of other sources of semen from Ramsey's underwear. The marks on her forehead did not match the soles of defendants' shoes, and blood found on the basement floor did not match that of Ramsey or the defendants. Despite this lack of physical evidence, the jury convicted Dogskin of aggravated sexual abuse and aiding

and abetting aggravated sexual abuse. In October 1998, Dogskin waived his right to appeal in exchange for a sentence reduced from 151 to 70 months.

In October 2000, some time after Ramsey was killed in a traffic accident, Dogskin filed a motion for a new trial based on newly discovered evidence and alleged government misconduct. To support these claims, Dogskin submitted affidavits from five witnesses as well as his own affidavit protesting his innocence of the rape charges. The district court denied the motion without an evidentiary hearing and then denied Dogskin's motion to vacate its initial order. Noting its familiarity with the facts as the result of presiding at trial, the court concluded that none of the affidavits warranted a new trial or an evidentiary hearing. Dogskin appeals. We review the district court's denial of a motion for a new trial for abuse of discretion. United States v. Worley, 88 F.3d 644, 646 (8th Cir. 1996).

## II.

Motions for a new trial based on newly discovered evidence are disfavored. United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994), cert. denied, 514 U.S. 1067 (1995). In general, a new trial will be granted only if the evidence was not discovered until after the trial; there was no lack of diligence by the movant; and the new evidence is material, more than merely cumulative or impeaching, and likely to produce an acquittal if a new trial is granted. See United States v. L'Donna, 179 F.3d 626, 629 (8th Cir. 1999). With those standards in mind, we review the allegedly newly discovered evidence Dogskin submitted to support his motion for a new trial.

1. An affidavit from Verna Laura Cypher, Ramsey's cousin, avers that Ramsey called Cypher while drunk and said, "I did something wrong to Nathan and I want to talk to you." Cypher told Ramsey to call back after she was sober, but Ramsey was killed two days later in an auto accident. Dogskin argues that Cypher's affidavit

warrants a new trial because Ramsey's statement that she did something wrong to Dogskin was a recantation of her trial testimony. We disagree.

Like most courts, we "look upon recantation with suspicion." United States v. Provost, 969 F.2d 617, 619 (8th Cir. 1992), cert. denied, 506 U.S. 1056 (1993); see United States v. Papajohn, 212 F.3d 1112, 1117 (8th Cir. 2000); United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir. 1991). However, recanted testimony that bears on a victim's credibility or directly on the defendant's guilt will warrant a new trial if it would probably produce an acquittal on retrial. Lewis v. Erickson, 946 F.2d 1361, 1362 (8th Cir. 1991). We conclude that Cypher's affidavit falls well short of this rigorous new trial standard. Harriet Ramsey, the rape victim, has died. She could not testify at a retrial, except perhaps through the introduction of her testimony at the first trial. See United States v. Brooks, 966 F.2d 1500, 1501, 1505 (D.C. Cir. 1992). Thus, a retrial would necessarily be a less reliable adjudication of the charged offenses. In this situation, the deceased victim's recantation must be powerful and unambiguous evidence of the defendant's innocence to justify overturning a conviction that has become final. Here, assuming the truth of Cypher's affidavit, Ramsey's inebriated telephone statement to Cypher was neither powerful nor unambiguous. We do not know -- and now have no way of learning -- what Ramsey meant, or even whether the "something wrong" was a reference to Dogskin's trial and conviction. Thus, Dogskin's characterization of the statement as a recantation is little more than speculation. Finally, at a retrial, Cypher's testimony relating Ramsey's statement would likely be inadmissible hearsay, see Worley, 88 F.3d at 646, and in any event would not be likely to produce an acquittal given Ramsey's prior trial testimony and Dogskin's admission that he participated in the rape.[2]

_____

[2]Dogskin also argues that he is entitled to a new trial because Cypher's affidavit establishes that the government negligently introduced Ramsey's false testimony at the first trial. This contention is without merit. As we have explained, the affidavit does not prove that Ramsey testified falsely. And there is no evidence the government knew or should have known her testimony was false.

2. An affidavit from Delsie Standing Bear, who did not testify at trial, avers that she saw Ramsey and Fasthorse in bed together on the morning of January 1 after the rape. Prior to trial, Ramsey admitted to the government that on the morning of January 1, after the rape, she was about to engage in sexual intercourse with Fasthorse when they were interrupted by Standing Bear. This evidence was provided to the defense before trial and then was excluded prior to trial under Rule 412 of the Federal Rules of Evidence. Thus, Standing Bear's evidence does not warrant a new trial because it is neither newly discovered nor admissible.

Standing Bear's affidavit further avers that Agent Helms intimidated her into not testifying at trial, which is the basis for Dogskin's assertion that government misconduct warrants a new trial. When Standing Bear told Helms she had seen Ramsey and Fasthorse in bed together on the morning of January 1, Helms said he did not believe her. Standing Bear then changed her story, but the government later learned from Ramsey that Standing Bear's initial statement was true. That all came out at trial during the defense's cross examination of Helms, except for Standing Bear's statement, which was excluded under Rule 412. What is new in Standing Bear's affidavit is the accusation that Helms, after telling Standing Bear he did not believe her story, warned that her child might be taken from her if she did not tell the truth, and that this threat caused her to avoid Dogskin's attempt to subpoena her to testify at trial. If it is true that Helms in effect threatened to challenge Standing Bear's child custody if she adhered to a statement he did not believe, that was a reprehensible investigative tactic, whether or not Standing Bear's initial statement turned out to be truthful. See United States v. Risken, 788 F.2d 1361, 1370-71 (8th Cir.), cert. denied, 479 U.S. 923 (1986). But the fact remains the testimony Helms allegedly intimidated Standing Bear into not offering was inadmissible under Rule 412. Thus, there is no "reasonable likelihood that the new evidence could have affected the judgment of the jury," and Helms's alleged misconduct does not warrant a new trial. Ray v. United States, 588 F.2d 601, 603 (8th Cir. 1978) (quotation

omitted); see Peeler v. Wyrick, 734 F.2d 378, 381 (8th Cir.) (harmless error rule applies), cert. denied, 469 U.S. 1020 (1984) .

3. Melvin Joseph Flying Horse's affidavit asserts that he was with Dogskin beginning at 6:00 a.m. "on or about the date of the alleged rape," that he saw Edgar Fasthorse quickly leaving the Dogskin residence later that morning, and that "there is no doubt in my mind that Edger Fasthorse is the man that raped Harriet Ramsey." Dogskin argues this is newly discovered alibi evidence, but it does not provide an alibi because the rape occurred around 1:30 a.m. Evidence of Dogskin's whereabouts after the rape, even if true, is not material and is not likely to produce an acquittal. See United States v. Deavault, 190 F.3d 926, 929 (8th Cir. 1999). We agree with the district court that Flying Horse's affidavit "is short on specifics, full of speculation and less than convincing."

4. According to Regina Beatrice Grant's affidavit, she "heard" that Fasthorse was sleeping with Ramsey, that Fasthorse was the one involved in the rape, and that Ramsey might have AIDS. She told Fasthorse that Ramsey might have AIDS, and Fasthorse later told Grant that he had been checked out at a clinic. These statements are inadmissible hearsay and in any event would not be likely to produce an acquittal at a new trial. See Worley, 88 F.3d at 646.

5. The affidavits of Cypher, Standing Bear, Grant, and Claudia Ramsey Charger all aver that Ramsey was a chronic liar. This is the type of third party impeachment testimony that rarely, if ever, justifies a new trial on newly discovered evidence grounds. See Jones, 34 F.3d at 600; United States v. Ward, 544 F.2d 975, 978 (8th Cir. 1976). Moreover, the evidence is cumulative. Two defense witnesses, including Ramsey's grandfather, testified at trial that Ramsey was a chronic liar. This evidence does not warrant a new trial based on newly discovered evidence.

Finally, Dogskin argues the district court abused its discretion in failing to conduct an evidentiary hearing. Absent exceptional circumstances, a motion for new trial based on newly discovered evidence may be decided on affidavits without a hearing. See Provost, 969 F.2d at 619; United States v. Bendar, 776 F.2d 236, 239 (8th Cir. 1985), Ward, 544 F.2d at 976. In this case, Ramsey's ambiguous statement to Cypher, which Dogskin construes as a recantation, created the only factual uncertainty that is even arguably an exceptional circumstance, and a hearing on that uncertainty would be meaningless because Ramsey is dead. We have assumed the truth of the other fact assertions in Dogskin's supporting affidavits and concluded that they do not constitute newly discovered evidence warranting a new trial. Thus, the district court did not abuse its discretion in denying an evidentiary hearing.

The judgment of the district court is affirmed. Appellant's motion to stay and remand is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.