# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3858

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Curtis Swayze, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2004
Filed: July 26, 2004 (corrected 8/13/04)

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury convicted Curtis Swayze of possessing, with intent to distribute, cocaine and cocaine base (crack). In this appeal, along with challenging evidentiary sufficiency, Swayze argues that the trial court erred when it refused to grant a new trial based on newly discovered polygraph results that showed one of his witnesses testified truthfully. We affirm.

## I. BACKGROUND

On the night they arrested Swayze, Sergeant Been and Officer Kolder entered the Cognac Club to conduct a routine bar check. Drug trafficking often occurred in the Cognac Club. In fact, most times Been checked the Cognac Club's restroom, he found evidence of drug trafficking or use.

When Been and Kolder entered the bar, Been walked directly to the men's restroom, while Kolder headed toward the women's restroom. The men's restroom door was shielded by a partition because the door did not lock. The restroom was one small room with a sink, a toilet, a urinal, and no stalls.

Been tried to push the restroom door open, but when he had opened it six to eight inches, he was met with resistance. Through the partially opened door, Been saw Eldridge Prince, a person Been recognized from other drug investigations. Been called for Kolder, and when she arrived, the two were able to force the door open.

Upon entering the restroom, the officers saw Swayze standing and facing the door. He did not appear to be using the toilet or the urinal. Been saw Swayze make a quick movement with his hand toward his mouth. Kolder made eye contact with Swayze and noticed his mouth was bulging. When Kolder spoke to Swayze, Swayze replied in a muffled voice that Kolder could not understand. Been twice ordered Swayze to open his mouth, but Swayze refused.

When Swayze tried to leave the restroom, the officers stopped him. A struggle ensued. The officers grabbed Swayze and tried to force him to the ground. Before he reached the ground, Swayze turned toward the toilet stool, reached into it, and tried to flush. After the officers were able to restrain Swayze and pull him away, Kolder saw and grabbed a baggie from the toilet. Later, after handcuffing Swayze, Been saw and seized another small baggie from the stool.

-2-

Both baggies contained drugs packaged in a manner consistent with distribution. One baggie contained 26 rocks of crack weighing 10.72 grams. The other contained several smaller packages of powder cocaine weighing 2.03 grams. Been saw chewing gum stuck on the bag containing the crack rocks. He also found $1,288 in cash in Swayze's pocket.

At some point during the struggle, Prince left the restroom. The officers never saw Prince put anything in his mouth or go near the toilet.

At trial, along with presenting the testimony of Been and Kolder, the government offered the testimony of Larry Simpson, who had pled guilty to drug charges before trial. Simpson testified about a conversation he had with Swayze while they were in the same cell block at the Linn County Jail. He testified that Swayze described his arrest, admitted that the drugs were his, and admitted that he tried to swallow and flush them. Simpson also testified that he had no knowledge of Swayze's arrest apart from Swayze's statements.

Swayze called two inmates from the same cell block at the Linn County Jail to impeach Simpson. Kevin Johnson testified that he saw Simpson reading Swayze's legal mail while Swayze was in the shower, thus contradicting Simpson's assertion that he obtained knowledge of Swayze's case only from their conversation. Johnson also testified that he never observed Swayze and Simpson talking about Swayze's case. Deon Harris testified that he also saw Simpson reading Swayze's mail. Harris also claimed that Simpson told Harris before trial that Simpson planned to provide false testimony to reduce Simpson's sentence.

On January 8, 2003, a jury convicted Swayze on two counts of possession with intent to distribute. On January 15, Swayze filed post-trial motions challenging the sufficiency of the evidence. The district court denied the motions.

On March 25, 2003, Johnson passed a polygraph examination administered by the Cedar Rapids Police Department. The experienced polygraph administrator determined that Johnson was not deceptive when he answered the following three questions:

Q.    Did Swayze ask you to provide any type of false testimony about this incident?

A.    No, sir.

Q.    Did you see Larry Simpson reading Swayze's mail?

A.    Yes, sir.

Q.    Since you have been cooperating with the Feds, have you lied to them about anything?

A.    No, sir.

Based on the polygraph administrator's determination, Swayze filed a motion for new trial under Federal Rule of Criminal Procedure 33. The district court denied the motion, and Swayze appeals.

## II.    DISCUSSION

In this appeal, Swayze argues three points. His first two points challenge the sufficiency of the evidence to support his convictions. His third point challenges the district court's decision not to grant a new trial based on the polygraph tests.

## A.    Evidentiary Sufficiency

When evaluating evidentiary sufficiency, we view the evidence in the light most favorable to the government, resolving all evidentiary conflicts in its favor and accepting all reasonable inferences that support the verdict. United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003). We will reverse the verdict only if "no reasonable jury could have found [Swayze] guilty beyond a reasonable doubt." Id.

A reasonable jury could have found Swayze guilty on both counts. To prove that Swayze possessed crack and cocaine with intent to distribute, the government had to prove that he actually or constructively possessed the drugs, that he knew he possessed the drugs, and that he intended to distribute at least some of the drugs. United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002). A reasonable jury could have found that Swayze actually possessed the drugs because the officers testified that Swayze reached toward his mouth, that Swayze's mouth was bulging, that Swayze reached into the toilet, that Swayze tried to flush the toilet, and that the officers later retrieved two baggies containing crack and cocaine base from the toilet, and one of the baggies had chewing gum stuck to it, suggesting that it had indeed been in Swayze's mouth. Also, a reasonable jury could have found that Swayze would not have tried to swallow and then flush the drugs unless he knew he possessed them. Finally, a reasonable jury could have found that the drug quantity, the packaging, and the amount of cash found on Swayze proved his intent to distribute the drugs.

## B.    Newly Discovered Evidence

To prevail on a motion for new trial based on newly discovered evidence, Swayze must show that the evidence was first discovered after trial, that his failure to discover the evidence before trial was not due to his lack of diligence, that the new evidence is material, that it is more than cumulative or impeaching, and that it is

-5-

likely to produce an acquittal if a court grants a new trial. United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001). We review for abuse of discretion. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).

The new evidence on which Swayze based his motion was Kevin Johnson's polygraph results. At trial, Swayze called Johnson to impeach government witness Larry Simpson. Simpson had testified that Swayze confessed to him, and that Simpson only knew of Swayze's case from the confession. But Johnson testified that he saw Simpson reading Swayze's legal mail and that he never saw Simpson and Swayze discussing Swayze's case. The polygraph examiner concluded that Johnson was not deceptive.

The district court did not abuse its discretion because Swayze did not show that Johnson's polygraph results would likely produce an acquittal in a new trial. When two witnesses contradict each other, juries, not polygraph tests, determine who is testifying truthfully. See United States v. Iron Cloud, 171 F.3d 587, 591 (8th Cir. 1999). Swayze could not have introduced the polygraph results to bolster Johnson's claim that he saw Simpson read the mail. See id. In fact, Swayze has not pointed us to any purpose for which the results would be admissible at a new trial.

Nor do we accept Swayze's argument about excluding Simpson's testimony. Swayze argues that the government would not be able to use Simpson's testimony at a new trial because Johnson's "successful polygraph examination . . . completely nullifies the incriminating testimony of Larry Simpson." Appellant's Brief at 21. This argument fails. We have already determined that the polygraph evidence is not reliable enough to even share with the jury members to help them determine credibility. It would be odd indeed, then, if we used the same unreliable evidence to determine, essentially, that Simpson is incompetent to testify.

## III.   CONCLUSION

We affirm because the evidence supported the verdict and because the results of Johnson's polygraph test could not impact a new trial.

_____