# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2580

_____

United States of America,       *
                             *

           Appellee,       *

                           *    Appeal from the United States
      v.               *    District Court for the
                           *    District of Minnesota.

Raymond Derrick Baker,    *

                           *

          Appellant.    *

_____

Submitted: December 12, 2006
Filed: March 13, 2007

_____

Before LOKEN, Chief Judge, MURPHY and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Raymond Derrick Baker was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the district court[1] imposed a sentence of 105 months imprisonment. See 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2000). Baker appeals the district court's order denying his motion for a new trial based on newly discovered evidence and his request for an evidentiary hearing. We affirm.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

At approximately 7:30 p.m. on July 26, 2005, Minneapolis Police Officers John Biederman and Jomar Villamor prepared to pull over a black, two-door Oldsmobile in north Minneapolis for failing to stop at a stop sign. As the officers initiated the traffic stop but before they activated their flashing lights to signal the driver to stop, the vehicle immediately pulled to the side of the road in front of 3546 Emerson Avenue North. The driver's side door opened, and the sole occupant of the vehicle fled on foot, running between his vehicle and the squad car, which provided the officers a clear view of his face. The suspect then headed toward the north side of a residence at 3550 Emerson Avenue North, and Villamor chased after him on foot. During this pursuit, the suspect looked over his shoulder, allowing Villamor a second opportunity to see his face. After chasing the suspect for approximately two blocks, Villamor lost sight of him.

While Villamor sought the suspect on foot, Biederman attempted to intercept him in the squad car but was unable to do so. Biederman then returned to the abandoned Oldsmobile and conducted an inventory search, discovering in part: (1) a .40 caliber Glock semiautomatic handgun; (2) a baggie containing crack cocaine and bearing Baker's fingerprint; (3) four cellular phones; and (4) two letters in the passenger compartment addressed to "Raymond Baker." One of the phones displayed a greeting line, "Bakes," Baker's nickname. A second phone contained two pictures, the first of a man that Biederman "immediately" identified as the suspect and the second of a black, two-door vehicle that appeared to be the abandoned Oldsmobile. Both photographs were taken approximately forty minutes before the officers initiated the stop of the Oldsmobile. Biederman used the squad car computer to access driver's license information for "Raymond Baker," including three pictures of Baker. Biederman positively identified Baker as the man who had fled the Oldsmobile. Upon returning to the squad car, Villamor also positively identified Baker as the person he

had pursued. Biederman and Villamor remained at the scene for approximately forty-five minutes, and the vehicle was towed to the impound lot.

In August of 2005, a federal grand jury indicted Baker, charging him with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). On December 8, 2005, a jury found Baker guilty of the sole count in the indictment. On December 30, 2005, Baker filed a motion for new trial based on newly discovered evidence and, in the alternative, requested an evidentiary hearing. The district court denied the motion and request for a hearing on February 13, 2006. Baker was sentenced to a term of 105 months imprisonment and three years supervised release. Baker brings this appeal of the district court's denial of his motion for a new trial and request for an evidentiary hearing.

II.

Baker contends that the district court erred in denying his motion for new trial based on newly discovered evidence because, following the guilty verdict, several witnesses were located with information regarding intimidation and manipulation by government witness, Arnanza Cork, in order to conceal that Cork was driving the vehicle stopped by police on July 26, 2005. Cork is a longtime acquaintance of Baker as well as the brother of Jabina Tate,[2] the mother of Baker's child. At trial, Cork testified that, following Baker's arrest, Baker contacted Cork and encouraged him to take the blame for the gun in Baker's car because Cork would receive a lighter sentence than Baker. Cork also testified that, though he and Baker sometimes swapped cell phones, he had not been in Baker's car on July 26, 2005, despite the fact

[2]Tate also goes by the name Bianca Dupree. Although the affidavits, at times, refer to her as Biana Dupree, she will be referred to here only as Jabina Tate, for consistency.

that Cork's fingerprint was found on a cell phone located during the search of the vehicle.  Though Baker has offered no authority for his assertion that Cork's alleged witness intimidation demands a new trial, he asserts that it is necessary as a matter of public policy.

We review the district court's denial of Baker's motion for a new trial based on newly discovered evidence for clear abuse of discretion.  United States v. Duke, 255 F.3d 656, 659 (8th Cir. 2001).  The standard for a new trial on this basis is "rigorous" because these motions are "disfavored."  United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001).  In order to receive a new trial based on newly discovered evidence, Baker

> must prove four factors . . . :  (1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial.

United States v. Haskell, 468 F.3d 1064, 1076 (8th Cir. 2006); see also United States v. Johnson, 450 F.3d 366, 372 (8th Cir. 2006) (same).  Furthermore, in order to meet the materiality requirement, newly discovered evidence must be "more than merely . . . impeaching."  Dogskin, 265 F.3d at 685; see Johnson, 450 F.3d at 372-73 (holding that the district court did not abuse its discretion in denying motion for new trial based on newly discovered evidence where the "evidence would serve only to impeach . .

. testimony"). With these requirements in mind, we review the allegedly newly discovered evidence Baker contends warrants a new trial.[3]

First, an affidavit from Michael Garrett, an inmate in the Sherburne County Jail, avers that, during Baker's trial, Cork told Garrett that Baker was not guilty of the gun charge and that Cork had, in fact, been in possession of the gun. Second, Jabina Tate avers that she saw Baker being dropped off on the corner of Emerson Avenue and 36th Avenue, at the time Baker's car was being searched by police on July 26, 2005. Tate further asserts that Cork told her that it was him, not Baker, who fled Baker's vehicle that day. Finally, Nancy Vanderheider, Baker's attorney, avers that another inmate at the Sherburne County Jail, Jerry Carroll, told his counsel, on an unrelated matter, that Cork admitted to Carroll that Cork lied at Baker's trial and that it was, in fact, Cork that was driving Baker's vehicle and ran from police.

With regard to the affidavits, Garrett's statement would be offered to impeach Cork's testimony, which is insufficient to warrant a new trial. See Johnson, 450 F.3d at 372-73; Dogskin, 265 F.3d at 685. Second, Tate's statements do not necessitate a new trial because there is no evidence that she was unavailable to Baker at the time of trial nor any indication that due diligence could not have uncovered this evidence at that time. See Haskell, 468 F.3d at 1076. Finally, Cork's alleged post-trial admission to Carroll constitutes recanted testimony, so "we view it and its potential evidentiary value at a new trial with suspicion." See United States v. Holmes, 421 F.3d 683, 688 (8th Cir. 2005); see also United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) ("'The stability and finality of verdicts would be greatly disturbed if

---

[3]Baker proffered other evidence to the district court in support of his motion for new trial, which the district court found insufficient; however, our review is limited to the arguments raised in Baker's brief. See Fed. R. App. Pro. 28(a)(9)(A); Rotskoff v. Cooley, 438 F.3d 852, 854-55 (8th Cir. 2006); United States v. Zavala, 427 F.3d 562, 564 n.1 (8th Cir. 2005).

courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.'") (citation omitted); United States v. Papajohn, 212 F.3d 1112, 1117 (8th Cir. 2000) ("Motions for a new trial based upon the alleged recantation of a material witness are viewed with disfavor in this circuit and are difficult to win."). While "recanted testimony that bears . . . directly on the defendant's guilt will warrant a new trial if it would probably produce an acquittal upon retrial," Dogskin, 265 F.3d at 685, Cork's recantation is not likely to do so, given the substantial evidence demonstrating Baker's guilt. See United States v. Deavault, 190 F.3d 926, 929 (8th Cir. 1999). This evidence consists of testimony from Biederman and Villamor that Baker, and not Cork, was the individual they saw fleeing the vehicle coupled with the numerous items found in the vehicle linking Baker to it, including the cell phone containing a picture of Baker taken less than an hour before the police stopped the vehicle, the cell phone bearing Baker's nickname, the baggie of crack cocaine with Baker's fingerprint on it, and multiple letters addressed to Baker. In light of the significant evidence of Baker's guilt, Baker has failed to show that it is likely Carroll's statement would result in Baker's acquittal upon retrial such that the "rigorous" new trial standard has not been met. See Dogskin, 265 F.3d at 685; see also Johnson, 450 F.3d at 372.

In addition, Baker offers investigator Julie Davison's reports, detailing information she received from Tate and Cork. Tate told Davison that Cork committed the crime that Baker was charged with and that Tate heard Cork admit to driving Baker's car and running from the police. Tate also stated that she witnessed a dispute between Cork and another individual regarding the ownership of the firearm that police found in Baker's car. Tate further reported that she saw Baker exit a vehicle on the corner of 36th Avenue on July 26, 2005, and that she spoke with Baker in the presence of Minneapolis police, at a time when Baker's car had already been, or was in the process of being, searched. Tate explained that she had not come forward prior to Baker's trial because she feared the other parties involved in the case. Also, Cork told Davison that Baker was not guilty and was not in possession of the gun found in

Baker's vehicle. Cork further stated that he was certain that Baker did not drive the vehicle to Emerson Avenue on July 26, 2005. Moreover, Cork expressed concern about police officers attributing statements to him falsely and specifically stated that he had never told police officers that he had seen Baker with a gun.

Concerning investigator Davison's report, Tate's statements do not qualify as newly discovered evidence because, as previously stated, there is no indication that Tate was not available to Baker at the time of trial or that due diligence could not have uncovered her account at that time. See Haskell, 468 F.3d at 1076. In addition, Cork's recantation to Davison is suspect, see Holmes, 421 F.3d at 688; Rouse, 410 F.3d at 1009; Papajohn, 212 F.3d at 1117, and not "likely to produce an acquittal" given the strength of the evidence against Baker, which includes, contemporaneous law enforcement eye witness identification as well as cell phone and fingerprint evidence. See Johnson, 450 F.3d at 372; see also Dogskin, 265 F.3d at 685; Deavault, 190 F.3d at 929.

Finally, as previously discussed, to the extent that any of this allegedly newly discovered evidence would be offered to impeach Cork's testimony, this is insufficient to warrant a new trial. See Johnson, 450 F.3d at 372-73; Dogskin, 265 F.3d at 685. Accordingly, the district court did not abuse its discretion in denying Baker's motion for a new trial.

## III.

Baker also claims that the district court abused its discretion by denying his request for an evidentiary hearing. "The district court has wide discretion" with regard to such requests. United States v. Preciado, 336 F.3d 739, 747 (8th Cir. 2003). "Absent exceptional circumstances, a motion for new trial based on newly discovered

evidence may be decided on affidavits without a hearing." <u>Dogskin</u>, 265 F.3d at 687. Furthermore, "[t]he necessity for a hearing is lessened in cases involving challenged testimony where the trial judge has had the opportunity to observe the demeanor and weigh the credibility of the witness at trial." <u>United States v. Begnaud</u>, 848 F.2d 111, 113 (8th Cir. 1988); <u>see also</u> <u>Preciado</u>, 336 F.3d at 747 (stating that "[a] district court is in the best position to weigh the evidence and evaluate witness credibility").

In this case, the district court, having conducted Baker's trial, was well aware of the facts of the case and had observed the witnesses and evidence. Accordingly, the district court was able to assess the impact of the allegedly newly discovered evidence on Cork's testimony and, ultimately, the strength of the government's case against Baker. <u>See</u> <u>Preciado</u>, 336 F.3d at 747; <u>Begnaud</u>, 848 F.2d at 113. Because these facts present no exceptional circumstances warranting an evidentiary hearing on the motion for new trial, the district court did not abuse its wide discretion in denying Baker's request for an evidentiary hearing. <u>See</u> <u>Preciado</u>, 336 F.3d at 747; <u>Dogskin</u>, 265 F.3d at 687.

## IV.

The judgment of the district court is affirmed.

_____