# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1344

_____

United States of America,

    Appellee,

v.

Dale Wayne Aldridge,

    Appellant.

\* \
\* \
\* \
\*   Appeal from the United States \
\*   District Court for the Southern \
\*   District of Iowa. \
\* \
\* \
\*

_____

Submitted: September 22, 2011
Filed: December 15, 2011

_____

Before MELLOY, SMITH, AND BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

    A jury convicted Dale Wayne Aldridge of conspiring to distribute 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), and 846. The district court[1] sentenced him to life imprisonment. Aldridge appeals, asserting (1) error in denying his motions to suppress, (2) error in admitting evidence of prior drug convictions, (3) insufficiency of the evidence, and (4) violation of the Eighth Amendment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

    [1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

In early 2010, a confidential informant told police that Annquinette Lynn Klaus was distributing meth. Police put a GPS device on her vehicle and made four controlled buys from her. Then, police (with a search warrant) found meth, syringes, and other paraphernalia at her house. Police arrested Klaus for distributing meth. She identified Aldridge and another person, Joann Burns Carter, as two of her suppliers. Police used Klaus for a controlled buy from Carter, who also named Aldridge as a supplier.

Based on this information and after further investigation, two Drug Enforcement Agency (DEA) agents decided to talk to Aldridge. They contacted Aldridge's probation officer and requested she contrive a meeting between them at the county courthouse. (Aldridge was required to follow his probation officer's orders to report.) Aldridge had already seen his probation officer that day, but she called and directed him to return. She did not mention the agents. Aldridge entered the courthouse and headed downstairs to the probation office and sheriff's department. The agents stopped Aldridge at the bottom of the stairs, introduced themselves, and asked to talk with him. He agreed to speak with them. The agents led Aldridge into the interrogation room inside the sheriff's office. They questioned him about his meth activities. The agents did not read him his *Miranda* rights. They told him he was not under arrest and was free to go at any time. They asked him to cooperate and help pursue his drug suppliers. At one point, the agents told him they had his fingerprint on a bag of meth, which was not true. He admitted distributing meth to Klaus and Carter and to two other people, Norman Miner and Christine Dunkin. Aldridge tried two unsuccessful calls to his supplier. He also agreed to a search of his person and house that afternoon, and drove himself and one agent there. The search did not produce any money or drugs. Aldridge returned with the agents to the courthouse and consented to a pat-down search. In his wallet, the agents found what they thought were "drug notes" detailing who had paid and who owed money.

Aldridge told officers he was unsure of the notes' purpose and was unable to identify the notations. He agreed to continue to cooperate and walked out of the courthouse at the end of the interview.

Three days later, Aldridge, the two DEA agents, and two city officers met in the same room at the courthouse.[2] The agents again said he was free to leave and not under arrest. Aldridge told them about a second supplier, who gave him half pounds of meth every Monday for the last five or six months. At the end of the meeting, Aldridge agreed to record a conversation between himself and this supplier. However, when next contacted, he stopped cooperating. Police then arrested him.

Before trial, Aldridge recanted his confessions and moved to suppress them under *Miranda* and the Due Process Clause of the Fifth Amendment. After a hearing, the court denied the motions.

At trial, Klaus, Carter, Miner, and Dunkin testified they received meth from Aldridge. The agents testified to Aldridge's confessions. Also admitted were the drugs purchased from Carter during the controlled buys, and evidence of Aldridge's four felony drug convictions. Several witnesses testified for Aldridge about his character, ability as a carpenter, and that they had not seen him using or dealing drugs.

The jury convicted Aldridge of conspiracy to distribute meth. He was sentenced to the statutory minimum of life imprisonment based on two prior felony convictions.

---

[2] The agents testified, and the district court found, that Aldridge contacted them to set up the meeting. He testified the agents called and asked to meet with him. The district court's resolution of the conflicting testimony is not clearly erroneous.

II.

A.

Aldridge argues that the district court erred in denying his motion to suppress his confessions and the resulting evidence. He contends that the agents violated his Fifth Amendment rights by not giving him *Miranda* warnings during their two meetings. Aldridge further asserts that the use of his confessions violated the Due Process Clause because they were obtained through improper coercion and deception.

This court reviews de novo the legal determinations in the denial of a motion to suppress, and reviews the underlying factual determinations for clear error. ***United States v. Nguyen***, 608 F.3d 368, 374 (8th Cir. 2010).

This court first reviews Aldridge's challenges to the district court's factual findings: "Defendant was told that he was free to leave at any time and that he did not have to answer any questions, in addition to being told that he was not under arrest," and "Defendant's mobility was unimpeded by law enforcement." Aldridge argues that the evidence does not establish these facts, relying mostly on his own testimony. He believes he was "not free to leave the area, nor did he have the freedom to get to the door should he have tried to leave." The district court found that the men were spread around the table, the door was sometimes open, and Aldridge was free to move if he wanted. The district court resolved the conflicting testimony, and its factual findings on custody are not clearly erroneous. This case is not like *United States v. Ollie*, where this court found "no evidence" whether the police restrained Ollie's freedom of movement. 442 F.3d 1135, 1138 (8th Cir. 2006).

Second, the district court found, "Defendant acquiesced to questioning." Aldridge disagrees, claiming to be very uncooperative, taking a long time to respond to the agents' questions, refusing to explain the drug notes found on him, and

-4-

declining to name his suppliers. There was, however, much contrary evidence, as summarized by the district court: "Defendant agreed to attempt to call his suppliers and to set up a controlled purchase of methamphetamine; consented to the search of his home, his vehicle, and his person; and provided incriminating information regarding his drug distribution operation." The district court did not clearly err in finding that Aldridge acquiesced to questioning.

As to the district court's legal determination on custody, this court reviews de novo the conclusion that Aldridge was not in custody. *Miranda* warnings are required when a suspect is interrogated while in custody. ***Nguyen***, 608 F.3d at 374, *citing **Miranda v. Arizona***, 384 U.S. 436, 478 (1966). Aldridge was undoubtedly interrogated, as "interrogation occurs when a law enforcement officer engages in 'either express questioning or its functional equivalent.'" ***United States v. Hernandez-Mendoza***, 600 F.3d 971, 976-77 (8th Cir. 2010), *quoting **Rhode Island v. Innis***, 446 U.S. 291, 300-01 (1980). The issue is whether Aldridge was in custody. Custody depends on the totality of the circumstances; this court considers six factors:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police-dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

***United States v. Carlson***, 613 F.3d 813, 817 (8th Cir. 2010), *citing **United States v. Griffin***, 922 F.2d 1343, 1349 (8th Cir. 1990). The ultimate test is whether a reasonable person in that position would have felt free to end the interview. ***Ollie***, 442 F.3d at 1137.

Aldridge relies on *Ollie* to argue that he was in custody during the first interview. In that case, the defendant (a convicted felon) was ordered by his parole officer to meet police to discuss the ownership of a weapon found in his home. The defendant met with an officer in a police station, was not *Mirandized*, eventually confessed, and was convicted. ***Id.*** at 1136-37. Based on the first five factors above, this court concluded that the defendant was in custody. First, the officers told him he was not under arrest, but never told him he was free to leave. This court noted that "an explicit assertion that the person may end the encounter is stronger medicine" than advising someone he or she is not under arrest. ***Id.*** at 1138. As noted above, this court found no evidence on the second factor, unrestrained freedom of movement. Regarding the third factor – voluntary acquiescence – the court found that Ollie did not acquiesce in the questioning, because he was there only at his parole officer's order (which he had to follow). Fourth, the police officers used almost the same deceptive tactics as in this case (falsely implying they had Ollie's fingerprints on the weapon). This court noted that this type of deception was irrelevant to the question of custody. Finally, the court found a police-dominated atmosphere. ***Id.*** at 1139.

This case is distinguishable from *Ollie*. The *Ollie* court identified as the tipping point Ollie's reasonable belief that "he could be punished for ending the interview without permission of the police or his parole officer." ***Id.*** Ollie's parole officer testified that if he refused to attend the interview, "it would have been a violation of his parole and [a revocation of his parole status] very well could have happened." ***Ollie***, 442 F.3d at 1140.

In contrast, the officers here told Aldridge he was free to leave at any time, and the district court found he acquiesced in the questioning; "the only request [Aldridge's probation officer] made of the Defendant was that he report to her office at the courthouse." Aldridge's probation officer testified that she believed Aldridge would understand that if he refused to speak with the agents, she would initiate an investigation to see if a probation violation had occurred. Aldridge argues that his

-6-

probation officer's involvement forced him to talk to the agents because he feared his probation would be revoked if he did not. This argument misstates the facts – even Aldridge testified at trial only that he feared his probation officer would start a formal inquiry into whatever the agents were investigating. Thus, Aldridge could not reasonably fear a probation revocation unless he believed an investigation would uncover probation violations. If no wrongdoing were found, he had nothing to fear from refusing to meet with the agents. Aldridge would not have been "punished for ending the interview." *Cf. **Ollie***, 442 F.3d at 1140.

In this case, the first, second, third, and sixth *Carlson* factors weigh heavily against a finding of custody. The agents told Aldridge several times he was free to leave and not under arrest, he had unimpeded mobility during questioning, he acquiesced to their questions and requests, and he was not arrested at the end of questioning. The fourth and fifth factors favor a finding of custody, as the agents used deception and dominated the meeting. Under the totality of the circumstances, a reasonable person would have felt free to end the meetings. Aldridge was not in custody during the first interview and therefore had no right to a *Miranda* warning. Likewise, he was not in custody during the second interview, as he initiated it and was again told he was free to leave.

Aldridge claims that the use of his confessions violate the Due Process Clause because they were obtained through improper coercion and deception. A confession violates a defendant's right to due process only if it is involuntary. "The test for determining the voluntariness of a confession is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." ***United States v. Cody***, 114 F.3d 772, 776 (8th Cir. 1997). The district court made the following findings of fact:

> Agent Cory testified that Defendant did not appear to be under the influence of drugs or alcohol during either the June 14 or the June 17

interview, and that Defendant appeared to be an individual of normal intelligence. Agent Tinker testified that neither he nor Agent Cory ever threatened Defendant with a probation violation if Defendant refused to talk with the agents. Agent Tinker also noted that neither he nor Agent Cory raised their voices during either interview with Defendant and explained that such a tactic would not have worked because "[w]e wanted Dale to work with us and cooperate with us and try and further the investigation, so raising our voice with Dale would not have been the way to handle that." Tr. 60. Further, Agents Tinker and Cory were in plain clothes, and neither displayed a weapon during either interview.

Aldridge does not dispute these findings but argues that the "deceptive" tactics and the police-dominated atmosphere are enough to show that his will was overborne. That is not enough. *See **United States v. Boslau***, 632 F.3d 422, 428-29 (8th Cir. 2011) ("The mere fact that an officer may have elicited a confession through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices, does not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." (internal quotation marks omitted)).

B.

According to Aldridge, the district court should have excluded evidence of his four felony drug convictions: possession of marijuana in 1990, solicitation to possess meth in 1991, possession of marijuana in 1998, and possession with intent to distribute meth in 2005.

This court reviews "a district court's decision to admit evidence under Federal Rule of Evidence 404(b) for abuse of discretion and reverse[s] only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." ***United States v. Henderson***, 613

F.3d 1177, 1182 (8th Cir. 2010) (alteration in original), *quoting **United States v. Thomas***, 593 F.3d 752, 757 (8th Cir. 2010). District courts may admit 404(b) evidence of a prior conviction in order to prove intent or knowledge. ***Id., citing United States v. Trogdon***, 575 F.3d 762, 766 (8th Cir. 2009). The prior conviction must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." ***United States v. Williams***, 534 F.3d 980, 984 (8th Cir. 2008).

Aldridge believes that his 1990, 1991, and 1998 convictions were irrelevant and too remote. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." **Fed. R. Evid. 404(b)**. Because Aldridge made a general denial of the offense, evidence of his prior drug-related convictions is relevant to his intent and knowledge. *See **Trogdon***, 575 F.3d at 766; ***United States v. Foster***, 344 F.3d 799, 801 (8th Cir. 2003). The amount and type of drug in the prior convictions does not have to mirror the charges. *See **United States v. Logan***, 121 F.3d 1172, 1178 (8th Cir. 1997). It is not decisive that Aldridge's previous convictions were for smaller amounts or for marijuana instead of meth. ***Id.*** Here, the crimes were relevant and supported by significant evidence.

The remaining issue is whether the 1990, 1991, and 1998 convictions were too remote. Aldridge relies on *United States v. Halk*. 634 F.3d 482, 488 (8th Cir. 2011):

> "To determine if evidence is too remote, the court applies a reasonableness standard and examines the facts and circumstances of each case." *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (internal quotation marks omitted). "[T]here is no fixed period within which the prior acts must have occurred." *United States v. Baker*, 82

F.3d 273, 276 (8th Cir. 1996). We have generally been reluctant to uphold the introduction of evidence relating to acts or crimes which occurred more than thirteen years prior to the conduct challenged. *Strong*, 415 F.3d at 905.

The *Halk* decision, however, recognizes that the 13-year rule does not apply where the defendant spent part of that time in prison. ***Halk***, 634 F.3d at 488-89 (allowing evidence of a 19-year old conviction where the defendant spent more than 12 of those years in prison). *See also **United States v. Williams***, 308 F.3d 833, 837 (8th Cir. 2002) (allowing evidence of a 20-year-old conviction where the defendant spent 16 of those years in prison); ***United States v. Walker***, 470 F.3d 1271, 1275 (8th Cir. 2006) (allowing evidence of an 18-year-old conviction where the defendant spent 10 of those years in prison). *But see **United States v. Strong***, 415 F.3d 902, 905 (8th Cir. 2005) (allowing evidence of a 16-year-old conviction without a finding that the defendant had been in jail during the interim, because of the similar nature of the offenses).

In this case, Aldridge was incarcerated for just 14 months between his 1991 offense and this offense, and the 1990 and 1991 offenses (possession of marijuana and solicitation to possess meth) were for different crimes than the charge here (conspiracy to distribute meth). There is no basis to deviate from the 13-year limit on convictions. The district court abused its discretion in admitting the 1990 and 1991 convictions (20 and 19 years old), but did not err in admitting evidence of the 1998 and 2005 convictions (12 and 5 years old).

This court, however, "will not reverse a conviction if an error was harmless." ***Henderson***, 613 F.3d at 1183 (finding harmless error despite the introduction of defendant's 16-year-old conviction, although it was deemed more prejudicial than probative), *quoting **United States v. Donnell***, 596 F.3d 913, 919 (8th Cir. 2010). "The test for harmless error is whether the erroneous evidentiary ruling had a

substantial influence on the jury's verdict." *Id.* (quotation omitted). This court has found harmless error where "the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt that the defendant was guilty even without the evidence that should have been excluded." *United States v. Falls*, 117 F.3d 1075, 1077 (8th Cir. 1997) (quotation omitted). Evidence against Aldridge was considerable, including his own confessions and testimony from four meth customers. His 1990 and 1991 convictions were "merely 'cumulative of other evidence establishing [his] knowledge and intent to participate in the conspiracy.'" *Donnell*, 596 F.3d at 919. Moreover, the district court gave a limiting instruction that prohibited the jury from using Aldridge's prior convictions to decide whether he committed the crime charged. "[T]he presence of a limiting instruction diminishes the danger of any unfair prejudice arising from the admission of other acts." *Strong*, 415 F.3d 906, *quoting United States v. Franklin*, 250 F.3d 653, 659 (8th Cir. 2001). Introduction of the 1990 and 1991 convictions was harmless error.

C.

Aldridge argues that the evidence was insufficient to support his conviction. This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010), citing *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). On review, evidence is viewed most favorably to the verdict, giving it the benefit of all reasonable inferences. *Id.* Reversal is appropriate only where no reasonable jury could find all the elements beyond a reasonable doubt. *Id.* This court does not weigh the credibility of the witnesses or the evidence. *Id.* The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict. *Id.*

Aldridge contends that the government's evidence at trial was insufficient to allow the jury to reasonably infer that he had committed the crimes charged. He cites

(1) the testimony of heavy drug users motivated by their own self-interest, (2) the lack of drugs on his person or in his home, (3) that his confessions were not recorded and he was not *Mirandized*, and (4) the testimony of his character witnesses about his other sources of income. However, the jury heard testimony from four witnesses who said Aldridge distributed meth to them, and from two agents that Aldridge confessed three times to distributing more than 500 grams of meth (at the two courthouse meetings and during a proffer). The jury's credibility determinations are virtually unreviewable on appeal. ***Trogdon***, 575 F.3d at 767. There was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Aldridge conspired to distribute meth.

D.

Aldridge argues that the mandatory life sentence for his convictions violates the Eighth Amendment. He contends the sentence is "grossly disproportionate" to the gravity of the crime and therefore constitutes cruel and unusual punishment.

This court reviews de novo an Eighth Amendment challenge to a sentence. ***Wiest*** at 911. This court's review of a sentence is "quite narrow," as the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" ***United States v. Prior***, 107 F.3d 654, 660 (8th Cir. 1997) *quoting **Harmelin v. Michigan***, 501 U.S. 957, 1001 (1991).

> This argument, however, has been consistently rejected by our court. *See **United States v. Whiting***, 528 F.3d 595, 596-97 (8th Cir. 2008) (holding that mandatory life imprisonment for defendant convicted of conspiracy to distribute and possession with intent to distribute cocaine did not violate the Eighth Amendment where defendant had two prior drug felonies, citing numerous Eighth Circuit opinions upholding mandatory life sentences in career offender drug cases).

*United States v. Moran*, 612 F.3d 684, 692 (8th Cir. 2010).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____