# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2603

_____

United States of America,            *
                                       *

        Appellee,            *

                                       *   Appeal from the United States

      v.                      *   District Court for the

                                     *   Southern District of Iowa.

Gloria Sanchez,               *

                                       *

        Appellant.          *

_____

Submitted: February 17, 2012
Filed: April 10, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Gloria Sanchez guilty of witness tampering in violation of 18 U.S.C. § 1512(b)(1), (2)(A). At sentencing, the district court[1] applied an eight-level enhancement to her offense level for threatening physical injury to a person in order to obstruct the administration of justice. See United States Sentencing Commission, Guidelines Manual, §2J1.2(b)(1)(B). Sanchez appeals her conviction and sentence. We affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

# I.

On September 8, 2010, Gloria Sanchez confronted Roberto Garcia at a gas station and made several threatening statements towards him and his family.[2] At the time, Garcia's wife was a cooperating witness in a federal criminal case against three of Sanchez's children. The next day, Sanchez attended a federal court proceeding regarding her children's case. While Sanchez was sitting in the courtroom, Drug Enforcement Agency (DEA) task force member Kelly Larson gestured to Sanchez to join Larson in the outside hallway. Upon doing so, Larson led Sanchez to an office in the court's basement normally used by the United States Attorney's Office. Sanchez then sat in a waiting room alongside her brother, daughter, grandson, and grandson's friend, whose presence DEA agents had also requested.

Fifteen to twenty minutes later, DEA agent Carlos Lavastida asked Sanchez to enter an adjoining interview room. The room was about fifteen feet by twelve feet with one door, which was closed behind her. DEA task force officer Tim Cook was also in the room, ready to translate if needed. Lavastida informed Sanchez she was not under arrest, and asked if she would answer questions about the gas station incident. She assented, and neither officer issued Miranda[3] warnings. Sanchez initially denied the incident altogether, but after Lavastida raised his voice and called her a liar, she admitted an exchange took place and that she had made certain statements. The government considered those statements to be witness intimidation. The interview—conducted in English—lasted ten to fifteen minutes, and officers did not arrest Sanchez upon its conclusion. On September 10, the government charged

---

[2]At trial, Garcia testified that Sanchez told him she blamed his wife for criminal charges filed against her daughter, and asked him, "Where's [your wife]?," "What would you think that if one of your children were killed?," and "What would you think if something happened to [your brother]?" Trial Tr. at 45-48, 58.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

Sanchez with knowingly intimidating a witness, resulting in her arrest on September 13.

Prior to trial, Sanchez moved to suppress the statements made during her September 9 interview, arguing that her Fifth Amendment rights had been violated because no Miranda warnings were issued. Applying the nonexclusive six-factor test set out in United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990), the district court denied her motion, holding that the interview did not require Miranda warnings because it had been a noncustodial interrogation. After a two-day trial, a jury found Sanchez guilty of witness intimidation. At sentencing, Sanchez objected to the district court's application of an eight-level enhancement to her offense level, which the court applied for Sanchez's threatening physical injury to a person in order to obstruct the administration of justice. She argued that her statements were not threats but were instead an attempt to evoke empathy from Garcia. With the enhancement, Sanchez's Sentencing Guidelines range was 41 to 51 months; without the enhancement, her Guidelines range was 15 to 21 months. The district court found the enhancement appropriate given the circumstances under which Sanchez made her comments to Garcia. It then varied downward to sentence her to 24 months in prison and 2 years of supervised release.

## II.

Sanchez appeals the district court's denial of her suppression motion and its application of the eight-level enhancement to her offense level. We address each in turn.

## A.

Sanchez argues that the district court erred by denying her suppression motion because the September 9 interview was custodial and Miranda warnings were

therefore required. We review the district court's legal conclusions de novo and the underlying factual determinations for clear error. See United States v. Aldridge, 664 F.3d 705, 710 (8th Cir. 2011).

Officers must inform suspects of their Miranda rights before subjecting them to custodial interrogations. Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief. See United States v. Vanover, 630 F.3d 1108, 1114 (8th Cir. 2011) (per curiam). Because the September 9 interview was an interrogation, see United States v. Hernandez-Mendoza, 600 F.3d 971, 976 (8th Cir. 2010) (interrogation occurs when officers engage suspect in express questioning or functional equivalent), the only issue is whether the interrogation was custodial. This court invokes a nonexclusive, six-factor test when making such a determination:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349. The analysis depends upon a review of the totality of the circumstances, and "[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." Aldridge, 664 F.3d at 711.

The first Griffin factor weighs heavily in favor of noncustody when officers clearly inform a suspect that she is free to leave or decline questioning. See United

-4-

States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004). However, when officers inform a suspect only that she is not under arrest, the first factor is less determinative in favor of noncustody, and our analysis relies more on the other indicia of custody. See United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) (where interviewer's statement to suspect that she was not under arrest weighed against custody finding, it was less determinative than a statement informing suspect that answers were voluntary and she was free to leave). This case presents the latter situation, as Sanchez's interviewers informed her that she was not under arrest but did not inform her that she was free to leave or decline questioning.

Looking to the second factor, it is unclear whether Sanchez's freedom of movement was restrained during the interview. While she was not handcuffed, see United States v. Galceran, 301 F.3d 927, 930 (8th Cir. 2002) (conclusion that suspect's freedom of movement was not restricted "as if he were under arrest" weighed in favor of noncustody), the interview was conducted in a small, closed room by two law enforcement officers, with other officers waiting outside. Sanchez did not attempt to leave, and it is unclear what would have happened if she had—particularly after Lavastida became more aggressive and called her a liar. See Ollie, 442 F.3d at 1138 (finding it impossible to determine if suspect's freedom of movement was restrained where suspect was not physically restrained but did not attempt to move or leave interview).

The third factor is also unclear. Sanchez did not initiate contact with police, and it is inconclusive whether she acquiesced to police questioning before entering the interview room. She did agree to questioning once in the interview room, but such compliance could have been in response to a police-dominated environment. The fourth factor weighs in favor of noncustody, as Lavastida did not use strong-arm tactics or deceptive stratagems during the interview; his raised voice and his assertions that Sanchez was lying were not coercive interview methods. See United States v. LeBrun, 363 F.3d 715, 721 (8th Cir. 2004) (en banc) ("[T]he coercive

aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart."); cf. Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993) (when determining whether statements are voluntarily made, use of raised voice and challenge to suspect's veracity are noncoercive interrogation tactics).

The fifth Griffin factor weighs in favor of custody, as the interview was police dominated. It was held in a courthouse-basement office normally used by federal prosecutors, who are closely associated with law enforcement—making the area the DEA task force's "home turf." See Ollie, 442 F.3d at 1139 ("Interviews taking place on police officers' 'home turf' are more likely to be police-dominated."); Aldridge, 664 F.3d at 709-10, 712 (interview by two DEA officers was police dominated when conducted in sheriff's department interrogation room housed in courthouse basement). Sanchez was isolated with two law enforcement officers in the small, closed interview room and was not given an opportunity to speak with others during questioning. Finally, the sixth factor weighs in favor of noncustody; Sanchez was not arrested immediately after the interview ended. See Galceran, 301 F.3d at 931 (lack of arrest is very important factor weighing against custody).

Although the interview was police dominated, Lavastida informed Sanchez that she was not under arrest, he did not employ strong-arm tactics or deceptive stratagems during the interview, and Sanchez was not arrested upon its conclusion. After weighing these factors and looking to the totality of the circumstances, we agree with the district court that a reasonable person in Sanchez's position would have felt free to end the interview.[4] See Aldridge, 664 F.3d at 712. Therefore, we further agree

---

[4]Sanchez's assertion on appeal that she could not understand her interviewer because of her limited English skills does not require us to find otherwise. She understood Lavastida enough to listen and respond appropriately to him, and she did not use the translator made available to her, except to translate one statement from Spanish to English. See Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1996)

with the district court that Sanchez was not in custody during the September 9 interview, and that Miranda warnings were not required.

## B.

Sanchez also appeals the application of an eight-level enhancement to her offense level. See U.S.S.G. §2J1.2(b)(1)(B) (eight-level enhancement may be applied if offense "involved causing or threatening to cause physical injury to a person . . . in order to obstruct the administration of justice"). This court reviews the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. See United States v. Birdine, 515 F.3d 842, 845 (8th Cir. 2008).

At sentencing, the district court concluded that the enhancement was appropriate based on trial testimony describing the statements Sanchez made to Garcia. Sanchez argues on appeal that her statements were not threats of physical harm, but instead were an attempt to evoke empathy from Garcia. She also argues that because Sanchez had not met Garcia before their exchange and Garcia had been estranged from his wife for over a year, she could not have known that the statements would be conveyed to Garcia's wife—and thus could not have intended the same.

Sanchez's arguments miss the mark. Her first argument asserts that the statements were not meant as threats, and her second argument asserts that she did not intend for the threats to be communicated to Garcia's wife. Both assertions contradict the jury's determination that Sanchez knowingly engaged in witness intimidation when she spoke to Garcia, and neither addresses whether the threats made were in fact threats of physical harm. Because the district court's view of the nature of Sanchez's remarks is a reasonable one, the eight-level enhancement was appropriate.

(suspect's limited English skills did not render interrogation custodial when he was able to carry on interview in English and required minimal help from translator).

-7-

See <u>United States v. Grap</u>, 368 F.3d 824, 832 (8th Cir. 2004) (section 2J1.2(b)(1)(B) enhancement is appropriate where defendant requested third party to convey threats of physical harm to witness, but third party omitted threats when requesting that witness alter testimony); <u>United States v. Duarte</u>, 28 F.3d 47, 48 (7th Cir. 1994) (section 2J1.2(b)(1)(B) enhancement functions to distinguish threats of physical injury or property damage from lesser threats).

III.

Accordingly, we affirm.

_____