# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3647

_____

United States of America

*Plaintiff - Appellee*

v.

Charles James Jones

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 20, 2016
Filed: December 2, 2016

_____

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Shalonda Clark and defendant Charles Jones lived together on the White Earth Indian Reservation. Their house burned down while they were both intoxicated and Clark died. Jones was thereafter convicted by a jury of second degree murder. The

district court[1] sentenced him to 324 months imprisonment.  Jones now appeals the district court's exclusion of expert testimony and photographs, the admission of several statements he made to police officers, and the application of a vulnerable victim sentencing enhancement.  We affirm.

I.

Shalonda Clark and Charles Jones had a history of domestic violence and were addicted to methamphetamine.  Eventually they were reduced to living in their living room with an electric stove for heat.  In December 2013 Jones acquired a bottle of butalbital, a migraine drug for which he had no prescription.  After he and Clark took a large number of these pills, a fire started in the house they shared and spread rapidly.  Clark died on the living room couch.

After the fire had started, Jones walked to the nearby home of the Sip family from where a family member called the police.  When an officer responded, he was invited inside the Sip house where he found Jones in the living room.  He asked Jones how the fire had started and where Clark was at the time.  Jones told the officer that Clark had been sleeping on the couch and that he had thrown a burning blanket over her.  He explained that he was "sick of the shit she put me through" and that she had "been nothing but cruel to me."  Jones then walked into the kitchen and tried to stab himself.  Two officers were able to stop him and put him in handcuffs.  While he was led to their police car Jones told them, "You finally fucking got me."  When an officer asked him what he meant, Jones responded, "That's all you're getting.  I hope I get the max."

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

The next day officers tried to question Jones after reading him his Miranda rights. They told him that Clark was dead and they needed to talk. Jones responded that he had nothing to say and that he wanted to end the interview. Nevertheless, he went on to volunteer that "she's a wicked bitch and that's it." Jones later unsuccessfully moved to suppress these statements after he had been charged with second degree murder.

Fire investigator R. Paul Bieber appeared at trial as an expert witness for Jones. Bieber's initial disclosure had stated that he would testify about the area where the fire started, whether it had been intentionally lit, and whether the government expert's investigation had been influenced by cognitive bias. After the government moved to exclude Bieber's testimony, the defense submitted two amended and more detailed disclosures. The district court decided to admit Bieber's testimony about the origin and cause of the fire, but not about the potential cognitive bias of the government's expert which had not been mentioned in either of Bieber's amended disclosures. Jones was convicted of second degree murder and was sentenced to 324 months imprisonment after the district court applied a vulnerable victim enhancement. Jones appeals.

II.

Jones argues that the district court committed reversible error by strictly limiting Beiber's testimony to the opinions he had provided in his final expert disclosure under Federal Rule of Criminal Procedure 16(b)(1)(C). The parties dispute the standard of review. The government argues that since Jones had not provided an offer of proof for Bieber's excluded testimony, that exclusion cannot be reviewed or at least only for plain error.

The record shows, however, that Jones did make an offer of proof on Bieber's excluded testimony and thus preserved the issue for appellate review. Jones argues

that we should review de novo the exclusion of his expert testimony because it denied him the right to present a defense. Our longstanding precedent makes clear, however, that the standard is abuse of discretion. See United States v. Coutentos, 651 F.3d 809, 820 (8th Cir. 2011). Rule 16(b)(1)(C) required Jones to disclose a written summary of the testimony Bieber intended to offer, describing Bieber's "opinions, the bases and reasons for those opinions, and [his] qualifications." Fed. R. Crim. P. 16(b)(1)(C). If a party fails to make an adequate expert disclosure, the district court may "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2).

Bieber provided his first expert disclosure to the government on February 13, 2015. In that disclosure, Bieber stated that he would testify about what caused the fire, where it originated, whether it had been started intentionally, and "the presence and influence of domain-irrelevant information" such as cognitive bias which might have affected the government expert's investigation. After the government moved to preclude Bieber's testimony, he provided an amended disclosure on February 24, which was the day before the pretrial conference. In that disclosure, Bieber stated that he planned to testify that the cause and specific origin of the fire could not be determined scientifically and that any "conclusions as to the intentional or accidental nature of the fire are not based on an examination or analysis of physical, fire-scene evidence, nor are they based on scientific, engineering or technical expertise."

After the trial began on March 2, the district court announced that it would only allow Bieber to testify to the opinions outlined in his amended disclosure if he were to provide more detail about the reasons underlying those opinions. After Bieber's second amended disclosure was submitted on March 4, he was able to testify to his opinions about the origin and cause of the fire, but not about alleged deficiencies in the government expert's investigation, cognitive bias, or other possible causes of the fire. Jones argues on appeal that the district court committed reversible error by excluding these areas from the expert's testimony.

We conclude that the district court did not abuse its discretion by excluding Bieber's proposed testimony about deficiencies in the government expert's investigation and his cognitive bias. As the court pointed out, Bieber's abbreviated description of these issues had not disclosed the reasons for his opinions as required by Rule 16(b)(1)(C). The defense then chose not to supplement his disclosures. The court did not abuse its discretion by excluding this expert testimony which had not been properly disclosed. See United States v. Holmes, 670 F.3d 586, 599 (4th Cir. 2012). Nor did the district court abuse its discretion by excluding Bieber's proposed testimony about other possible causes of the fire. Bieber stated that he had intended to testify that it was impossible to identify the specific cause and origin of the fire. Because of his limited disclosures the district court did not abuse its discretion by limiting his testimony, see Holmes, 670 F.3d at 599, or prohibiting the introduction of photographs about alternate possible causes of the fire. See United States v. Thetford, 806 F.3d 442, 446 (8th Cir. 2015) (standard of review).[2]

## III.

Jones argues that the district court[3] should have suppressed three statements he made to police officers. On an appeal from the denial of a motion to suppress, factual findings are reviewed for clear error and legal conclusions de novo. United States v. Allen, 713 F.3d 382, 386 (8th Cir. 2013). The Fifth Amendment requires suspects to be informed of their Miranda rights before any custodial interrogation. United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012). Interrogation, for Miranda purposes,

_____

[2]Jones argues for the first time in his reply brief that there had been no need to disclose testimony before it was offered to rebut that of the government's expert. We generally "do not consider arguments raised for the first time in a reply brief," United States v. Picardi, 739 F.3d 1118, 1123 n.3 (8th Cir. 2014), and we decline to do so here.

[3]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

means "express questioning" and "words or conduct that officers should know [are] 'reasonably likely to elicit an incriminating response from the suspect.'" United States v. Briones, 390 F.3d 610, 612 (8th Cir. 2004) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). If officers fail to inform a suspect of his rights, "any statement gained from the violation" is generally inadmissible during the government's case in chief. Sanchez, 676 F.3d at 630.

Jones first challenges the district court's decision not to suppress his initial statements to investigator Luke Sweere while his house was burning and Clark's body had not yet been discovered. When Sweere responded to the fire, witnesses told him that Jones was at the Sip house. Sweere went there, a resident invited him in, and he found Jones sitting on the living room couch. Jones was covered in soot and his hair was singed. He smelled of smoke and was dressed in clothes that appeared to be burned. Sweere asked where Clark was, and Jones answered that she was on the couch. When asked how the fire had started, Jones stated that "I started it." Sweere then asked him how and why he had started the fire, whether he and Clark had been using drugs, whether Clark had been awake when the fire started, and what she had done that day. Sweere noticed that Jones appeared to be under the influence of drugs, and Jones confirmed that. Nonetheless, Jones appeared alert, and he answered questions coherently.

The district court did not err in admitting Jones' statements. Most of them were admissible under the public safety exception to the Miranda rule. That exception permits a suspect's answer to a question to be admitted into evidence even if he had not first been informed of his Miranda rights so long as the purpose of the officer's question was to ensure public safety, not merely to elicit evidence. United States v. Everman, 528 F.3d 570, 572 (8th Cir. 2008). An objective standard is used to decide whether an officer's question was meant to aid public safety. Id. In the situation here, most of Sweere's questions served two public safety purposes. Clark was still missing when Sweere asked about where she was, and the fire was still burning when Sweere

asked Jones how it started. These were public safety concerns, and the questions were "not designed solely to solicit testimonial evidence." Id. Thus, the responses by Jones were admissible. See id. Moreover, any error in the admission of the remaining statements would have been harmless. For example, when Sweere asked why Jones had started the fire, he replied that Clark had been "nothing but cruel" to him. Given the extent of the trial evidence, it is clear beyond a reasonable doubt that this remark would not have had a significant influence on the jury's verdict. Any error in its admission was therefore harmless. See United States v. Farlee, 757 F.3d 810, 820 (8th Cir. 2014).

Jones next argues that all of his statements should have been suppressed because at the time he made them he had been intoxicated by a prescription drug. Intoxication does "not automatically render a confession involuntary; rather, the test is whether th[is] mental impairment[] caused the defendant's will to be overborne." United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990). The district court found that even though Jones had been intoxicated, his will had not been overborne and his statements were voluntary. In the audio recording of his interview with Sweere, Jones spoke slowly and appeared to answer some questions unresponsively, but officers testified that he had been coherent during his confession. Given this record, we cannot say that the district court clearly erred in determining that his "will was . . . not overborne."

Jones also argues that the district court should have suppressed statements he made after being handcuffed. Jones told investigator Daniel Skoog, "You finally fucking got me." When Skoog asked him what he meant, Jones responded, "That's all you're getting. I hope I get the max." Jones' first statement was not made in response to an officer's question and was admissible. See United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005). Jones' second statement also was admissible because "[a]n officer's request for clarification of a spontaneous statement" does generally not amount to interrogation. Id.

-7-

Jones finally argues that the district court should have suppressed a comment that he later made in jail after invoking his right to remain silent. Officers must stop questioning if a suspect clearly and consistently expresses a desire to remain silent. See United States v. Ferrer-Montoya, 483 F.3d 565, 569 (8th Cir. 2007) (per curiam). When special agent Daniel Baumann tried to question Jones in a jail interview room the day after the fire, Baumann read Jones his Miranda rights. Jones replied, "I ain't got shit to say to you, okay?" Baumann explained that he wanted to talk because Clark was dead and Jones had made incriminating statements during the fire. Jones responded that he did not know why he had made those statements. Baumann then told Jones he would send him back to his cell if he did not want to talk. Jones replied that was what he wanted, and Baumann said, "Okay." Then, Jones added, "She's a wicked bitch and that's it."

Jones was clearly in custody at the time of that last statement so the only question is whether it was spontaneous or the product of unlawful interrogation. The district court found that it had been unprovoked and that Baumann had not violated Jones' rights because he stopped his questioning as soon as the latter clearly said that he wanted to end the interview. We conclude that the district court did not clearly err in determining that Jones' final statement was spontaneous and unprovoked. Baumann had made clear that the interview was over and did not ask any question to elicit the statement which was not the product of interrogation. The district court did not err in admitting it.

IV.

At sentencing, the district court found Clark was a vulnerable victim and added two levels to Jones' guideline offense level. The enhancement for a vulnerable victim is appropriate if "the defendant knew or should have known" that he was a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). A victim may be vulnerable because of "age, physical or mental condition," or he is "otherwise particularly susceptible to the

criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. We review the district court's interpretation of the guidelines de novo and its factual findings for clear error. United States v. Betone, 636 F.3d 384, 388 (8th Cir. 2011).

Jones argues that the enhancement should not apply because the district court should not have admitted or considered his intoxicated statements, should have heard additional testimony from Bieber, and should have realized that he was too intoxicated to know that Clark was vulnerable. We conclude that the district court did not err in applying the enhancement. The court heard evidence showing that Clark had been asleep when the fire started and that Jones would have known that she was impaired because he had supplied her with drugs. Based on Jones' later interactions with police officers, it was not clear error for the district court to find that he was coherent enough to know that Clark had been vulnerable because of her mental condition.

V.

For these reasons we affirm the judgment of the district court.

_____