# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3199
_____

United States of America

*Plaintiff - Appellee*

v.

George Patino, also known as Giorgio Paticciano Patino

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 28, 2018
Filed: January 8, 2019
_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

George Patino appeals after the district court[1] admitted evidence of a 1998 conviction at trial and sentenced him to 40 months' imprisonment and 3 years' supervised release following his conviction on three counts relating to a conspiracy

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

to distribute human growth hormone ("HGH") for unauthorized purposes and to smuggle HGH into the United States. We affirm.

## I.

Patino operated a clinic and wholesale drug distribution business in Mexico that sold HGH to purchasers in the United States. He obtained HGH from Mexico and Asia and shipped it into the United States via mailed packages. He operated several English-language websites advertising HGH for sale, marketing himself as "an accredited Physician and Surgeon" and a "leader in the field of Human Growth Hormone Therapy" though he did not have a medical license from any state. Between April 2014 and June 2015, Patino sent more than ninety-five HGH packages to the Men's Medical Institute ("MMI"), a medical clinic in St. Louis County, Missouri. In exchange, Patino received a total of $67,720. Patino shipped HGH to other addressees in the United States through December 2015.

In February 2016, a grand jury indicted Patino on three counts: 1) conspiracy to distribute or possess with intent to distribute HGH in violation of 21 U.S.C. § 333(e)(1) and 18 U.S.C. §§ 2 & 371; 2) distribution or possession with intent to distribute HGH in violation of 21 U.S.C. § 333(e)(1) and 18 U.S.C. § 2; and 3) smuggling goods into the United States in violation of 18 U.S.C. §§ 2 & 545. A jury convicted Patino on all three counts.

Among other evidence at trial, the district court admitted the fact of Patino's 1998 conviction for possession of HGH with intent to distribute as well as statements Patino made at the time of his arrest for that crime to a special agent of the Food and Drug Administration's ("FDA") Office of Criminal Investigations. In particular, Patino stated that he was a medical doctor in Mexico but not the United States, that he was distributing HGH to medical doctors, and that he was aware that it was illegal to bring Mexican HGH into the United States.

After the guilty verdict, the United States Probation Office prepared a presentence investigation report ("PSR"), which concluded that the offense involved sophisticated means. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2T3.1(b)(1). This resulted in an advisory sentencing guidelines range of 21 to 27 months. The Government moved for a sentence above the guidelines range, and the district court sentenced Patino to 40 months' imprisonment.

Patino now appeals the admission at trial of his 1998 conviction pursuant to Fed. R. Evid. 404(b), the application of the sophisticated means enhancement at sentencing, and the district court's alleged failure properly to determine or explain its rationale for the upward departure for understated criminal history at sentencing.

## II.

### A.

Before trial, the Government timely filed notice under Fed. R. Evid. 404(b) that it planned to admit evidence of Patino's 1998 conviction for knowingly possessing HGH with intent to distribute for unauthorized use by humans. The Government argued that this conviction and Patino's statements to the FDA were relevant to prove Patino's intent, knowledge, and absence of mistake in joining the conspiracy to distribute HGH. Patino objected to the admission of the conviction based on its age and irrelevance and argued that it was more unfairly prejudicial than probative. The district court overruled Patino's objection, and the Government presented Patino's conviction and statements to the FDA during trial.

"Rule 404(b) prohibits the admission of other bad acts that are offered to prove the character of a person in order to show action in conformity therewith." *United States v. Hill*, 638 F.3d 589, 592 (8th Cir. 2011) (internal quotations omitted).

However, prior bad act evidence is admissible when introduced to show knowledge or intent. *United States v. Turner*, 583 F.3d 1062, 1065 (8th Cir. 2009). The "evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Gant*, 721 F.3d 505, 509 (8th Cir. 2013). "This court reviews a district court's decision to admit evidence under Federal Rule of Evidence 404(b) for abuse of discretion and reverse[s] only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011) (alteration in original) (internal quotation marks omitted).

Patino argues on appeal that his 1998 conviction was irrelevant and too remote and that its prejudicial effect outweighed any probative value. We conclude that the admission of Patino's 1998 conviction was not an abuse of discretion. It was used to prove intent and knowledge and was well supported by evidence. Because Patino pleaded not guilty to the charged offenses and contested their mens rea elements, evidence of his prior conviction for distributing HGH was relevant to his intent and knowledge. *See United States v. Logan,* 121 F.3d 1172, 1178 (8th Cir. 1997) (finding that "evidence of prior possession of drugs . . . is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element"). The district court gave two limiting instructions, mitigating any potential prejudicial effect. *See United States v. Horton*, 756 F.3d 569, 580 (8th Cir. 2014).

Also, the Government successfully demonstrated that Patino's prior crime was "similar in kind and not overly remote in time to the charged crime." *See United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002). "To determine if evidence is too remote, the court applies a reasonableness standard and examines the facts and circumstances of each case." *Aldridge*, 664 F.3d at 714. Here, Patino was convicted

in 1998 for conduct that occurred in August 1997, approximately sixteen years prior to the offense conduct in the present case. We have been reluctant to uphold the introduction of evidence relating to acts or crimes which occurred more than thirteen years prior to the conduct challenged. *See id.* But whether a conviction is close in time to the later offense is only "one factor indicating the relevancy of the evidence," *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995), and "there is no fixed period within which the prior acts must have occurred," *Aldridge*, 664 F.3d at 714. When, as here, the prior evidence is of conduct "extremely similar to the crime at issue, evidence of the act will usually be rendered irrelevant only by an enormous lapse of time." *United States v. Thomas*, 593 F.3d 752, 758 (8th Cir. 2010) (internal quotation omitted). Both in 1997 and 2014, Patino distributed large amounts of misbranded and unapproved HGH from Mexico into the United States. In fact, in 1998 he was convicted of the same crime charged in Count II of the present case. Given the similarity between both crimes, the 1998 conviction was not so remote in time as to render its admission an abuse of discretion. *See United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (affirming admission of a sixteen-year-old conviction); *United States v. Hernandez-Guevara*, 162 F.3d 863, 873 (5th Cir. 1998) (affirming admission of a nearly eighteen-year-old alien smuggling conviction when both cases "involved exactly the same crime").

## B.

Patino also argues that the district court improperly applied the sophisticated-means enhancement in determining his advisory sentencing guidelines range. *See* U.S.S.G. § 2T3.1(b)(1). At sentencing, Patino objected only to the PSR's application of the sophisticated means enhancement, but he raised no objections to any facts in his PSR. We review *de novo* whether the district court correctly applied the guidelines when it determined that these facts constituted sophisticated means. *United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005).

-5-

The proper application of the sophisticated-means enhancement for smuggling under U.S.S.G. § 2T3.1(b)(1) is a matter of first impression in this circuit, but the definition found in the fraud and tax contexts is similar and offers useful guidance here. *See United States v. Redman*, 887 F.3d 789, 793 (7th Cir. 2018). Sophisticated means are "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2T3.1(b)(1) cmt. n. 3. Examples include "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." *Id.* "The sophisticated-means enhancement is proper when the offense conduct, viewed as a whole, was notably more intricate than that of the garden-variety offense." *United States v. Meadows*, 866 F.3d 913, 917 (8th Cir. 2017). Repetitive and coordinated conduct can be subject to the enhancement even if no single step is complicated. *United States v. Huston*, 744 F. 3d 589, 592 (8th Cir. 2014).

Here, the unchallenged facts in the PSR and evidence at trial show sophisticated means. Patino engaged in repetitive and coordinated conduct, shipping more than ninety-five packages of HGH from Mexico to the United States for approximately forty patients over the course of more than a year and a half. *See United States v. Fiorito*, 640 F.3d 338, 351 (8th Cir. 2011) (affirming application of the sophisticated-means enhancement when the basic element of the scheme was simple but "the scheme as a whole spanned three years and at least eleven victims"). Patino mass-marketed HGH online by operating several English-language websites. *See United States v. Louper-Morris*, 672 F.3d 539, 564-65 (8th Cir. 2012) (affirming application of the sophisticated-means enhancement to a "vast marketing scheme" using, among other things, a website). Patino advertised his specialized medical expertise in his marketing materials and used his medical training in the offense conduct by offering advice on HGH dosages. *See United States v. Stafford*, 639 F.3d 270, 276 (6th Cir. 2011) (affirming application of the sophisticated-means enhancement when the defendant "misused his specialized knowledge of the mortgage industry to create and sustain [the] conspiracy"). Patino used multiple email addresses, suggesting the

existence of several different entities, including help@hgh.com.mx, drgp@doctor.com, clinic@swissmail.com, and sales@rxmedicalwarehouse.com. He attempted to hide transactions by using bank transfers rather than a credit card processor, explaining in an email that due to "heat" from United States' authorities his credit card processor was no longer accepting transactions for HGH. In addition, Patino packaged and shipped HGH in misleading ways. In some cases, he listed the sender as an individual rather than identify his business. Neither the labeling of the packages nor the customs declarations indicated that the contents contained HGH. Because of Patino's repetitive and coordinated conduct, his use of specialized medical knowledge to create and sustain his smuggling operation, his mass online marketing, his attempts to hide financial transactions from authorities, and his misleading email addresses and packaging, the district court properly applied the sophisticated-means enhancement.

C.

Patino's PSR calculated a total offense level of 16 and a criminal history category of I, resulting in an advisory guidelines range of 21 to 27 months. The Government filed a motion requesting a sentence above the guidelines range based in part upon Patino's understated criminal history. The district court imposed a sentence of 40 months' imprisonment for each count, to run concurrently. The district court pointed to Patino's understated criminal history as one reason for its sentence above the guidelines range. *See* U.S.S.G. § 4A1.3. Patino argues on appeal that the district court did not properly determine or explain its rationale for the extent of its upward departure based on understated criminal history.[2]

---

[2] The district court also explained that it was varying under 18 U.S.C. § 3553(a), stating that "the danger that the conduct of the Defendant placed purchasers and users of the HGH [in] . . . was significant and shamefully unacceptable." Patino does not challenge any variance on appeal, so he is deemed to have waived this issue. *See United States v. Rice*, 699 F.3d 1043, 1050 (8th Cir. 2012) ("Issues not raised in

A district court's sentence above the advisory guidelines range is reviewed for abuse of discretion. *United States v. Walking Eagle*, 553 F.3d 654, 656-57 (8th Cir. 2009). Upward departures are warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1).

The PSR assessed zero criminal history points to Patino, but as the Government pointed out, he had five uncounted prior convictions, including two for international drug distribution. We conclude that the district court did not abuse its discretion in imposing a sentence above the advisory guidelines range and sufficiently explained why Patino's understated criminal history justified an upward departure to 40 months. *See United States v. Olsen*, 716 F.3d 1052, 1056-57 (8th Cir. 2013) (affirming an upward departure where the defendant showed a substantial history of general disregard for the law).

## III.

For the foregoing reasons, we affirm.

_____

a party's opening brief are waived . . . .").